GARY M. RESTAINO
United States Attorney

ADDISON SANTOME
Arizona State Bar No. 031263
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: addison.santome@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-22-00543-001-PHX-DWL |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S PRESENTENCE REPORT OBJECTIONS AND SENTENCING MEMORANDUM** |
| Krista Michelle Sparks, | |
| Defendant. | |

Defendant KRISTA MICHELLE SPARKS ("Defendant") purchased the firearms for co-defendant Levi Bagne because he was unable to do as a prohibited possessor. The catalyst for her involvement in these offenses is his status. Her knowledge of his criminal history and pending application, while maintain he did not have access to the firearms, counsels in favor of her knowing he was a prohibited possessor.

Despite her knowledge and actions, a downward variance and concurrent sentence is appropriate due to the close connection to the chain of events of her prior conviction and need to address her underlying victimization through rehabilitation.

Finally, the government asks this Court to order the forfeiture of the firearms listed in the plea agreement.

//

## I. BACKGROUND

Since March 2019, the Federal Bureau of Investigation's (FBI) Central Wisconsin Narcotics Task Force began investigating a drug trafficking organization in which the Defendant was participating (PSR ¶ 6). At the conclusion of this investigation, a residential search warrant was executed at Defendant and co-defendant Levi Bagne's Arizona residence. (*Id.*). During the execution of this warrant, investigators found multiple firearms, ammunition, and high-capacity drum magazines. (*Id.*).

Of the firearms, four were found to have been purchased by the Defendant between March 21, 2021 and May 26, 2021. The investigation revealed that text message exchanges between Defendant and co-defendant Levi Bagne coincides with the purchase of some of the firearms. (PSR ¶ 11). These messages include instructions from co-defendant Levi Bagne to the Defendant to make specific firearm purchases. (*Id.*).

Although Defendant claims to believe co-defendant Levi Bagne's convictions were set aside or he had a pending restoration application, she also makes it clear she was keeping the firearms in a safe he didn't have access to. (PSR ¶ 10). Ultimately, Defendant was not able to provide the code to the safe. Meanwhile, co-defendant Levi Bagne provided the code demonstrating his ability to access the firearms. Co-defendant Levi Bagne told investigators the plan was for Defendant to transfer firearms to him upon having his rights restored. (PSR ¶ 7).

## II. PRESENTENCE REPORT

The government, having reviewed the final Pretrial Investigation Report (Doc. 47) prepared by U.S. Probation Officer Dan Johnson, concurs with the findings and guideline calculation.

## III. RESONSE TO DEFENDANT'S PRESENTENCE REPORT OBJECTIONS

The Defendant was appropriately found to have a Base level offense of 14, because she committed the offense with reason to believe the firearms would be transferred to a prohibited person. USSG §2K2.1(a)(6)(C). Specifically, she knew they were to be transfered to co-defendant Levi Bagne. Defendant has known Levi Bagne since she was

11. (PSR ¶ 43). In fact, she had dated him prior to his imprisonment in 2013 and upon his release in 2015. (*Id.*) She was familiar with his criminal history.

In early 2021, co-defendant Levi Bagne hired an attorney to file a motion to set aside his three felony convictions and restore his firearm's rights in each of his Maricopa County prior felony cases. On March 2, 2021, through counsel, those petitions were filed. This application was pending at the time these firearms were recovered, and ultimately denied a couple weeks later. His rights were never restored.

Based on the statements made by Defendant and co-defendant Levi Bagne, the plan was for her to purchase the firearms and transfer the firearms to co-defendant Levi Bagne after his rights were restored. However, at the time of the warrant, despite her assertion that co-defendant Levi Bagne did not have access to the firearms because she kept them in the safe, the only person with the safe combination was co-defendant Levi Bagne. Had the Defendant believed that co-defendnat Levi Bagne was not a prohibited possessor, why would she continue to assert that he did not have access to the firearms? It is because she knew the application had not been granted and he was a prohibited possessor.

## IV.    DEFENDANT'S MOTION FOR DOWNWARD VARIANCE IS APPROPRIATE

Defendant's advisory Guideline range is 15 - 21 months, based upon a Total Offense Level of 13 and Defendant's Criminal History Category II.  (PSR page 15.)  Probation is recommending a low-end sentence of 15 months followed by a 3-year term of supervised release.  Consistent with the 11(c)(1)(C) agreement in the plea agreement, the government believes a sentence under the guideline range is appropriate. The government also finds a downward variance is appropriate and 12 months and day followed by three years supervised release is sufficient, not greater than necessary, to accomplish the goals of sentencing. Additionally, the government recommends this sentence run concurrent to Defendant's sentence in U.S. District of Wisconsin case 3:21-cr-00047-DJP-5.

The Sentencing Guidelines are "the starting point and the initial benchmark" for sentencing.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  After considering the advisory

range, the "district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008)(en banc).  Pursuant to 18 U.S.C. § 3553(a) factors, the Court shall impose a sentence sufficient, but not greater than necessary to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2).

When considering the § 3553(a) factors, the United States submits a 12-month and a day incarceration term followed by three years supervised release is sufficient, but not greater than necessary, to achieve the principles of sentencing.

The nature and circumstances of these offenses—Straw Purchasing—are serious. 18 U.S.C. § 3553(a)(1).  Straw purchasing fuels violent crime. Firearm violence is an epidemic in the United States, and the Defendant played the pivotal role in providing firearms to a prohibited possessor. However, the recovery of the firearms in this case mitigates the future risk.

The history and characteristics of this Defendant suggest she can be rehabilitated with appropriate support.  U.S.C. § 3553(a)(1).  At 28 years old, the Defendant, while fighting a substance abuse addiction, found herself convicted of Conspiracy and Money Laundering. She is now taking responsibility for this offense that arose out of the conclusion of her prior. She is young and the majority of her criminal history is from the same chain of events with the same person – co-defendant Levi Bagne. She has already served a term of incarceration and appears amenable to rehabilitation.

The nature of Defendant's conduct counsels in favor of a sentence that will hopefully serve as an adequate deterrent against further criminal conduct by Defendant.  18

U.S.C. § 3553(a)(2)(B).    Defendant has been in custody since committing pretrial violations in her other criminal case. Given the investigative overlap between her prior and current offense, adding only a short additional term is appropriate.

The Defendant could benefit substantially from continued mental and substance abuse treatment and additional educational assistance.    U.S.C. § 3553(a)(2)(D).    The Defendant has participated in evaluations which highlight her needs that could be soothed with treatment. In addition, Defendant has expressed a desire to obtain her GED. Defendant can take advantage of the resources available to her both during incarceration and while on supervised release.

Given the continuity of Defendant's prior conviction and this case and the need for additional resources to rehabilitate the Defendant, a concurrent 12-month and a day sentence followed by three years supervised release term is appropriate.

**V.    Conclusion**

Although the government opposes the Defendant's objection to the base level decrease, we ultimately agree a less than guideline sentence is appropriate. Based on the above, the government requests this court impose a 12-month and a day sentence followed by three years of supervised release.

Respectfully submitted this 9th day of May, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

 *s/Addison Santome*
ADDISON SANTOME
Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2023, I either provided copies in person in court or electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to various defense counsel to be appointed.

Jane L. McClellan
*Attorney for Defendant*


s/Addison Santome
United States Attorney's Office